**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
--------------------------------------------------------X
UNITED STATES OF AMERICA,

                              Plaintiff,

                                                                    **REPORT AND**
                                                                    **RECOMMENDATION**
           - against -

ESTATE OF LILLIAN WIESNER, JOHN P.
MAFFEI, and 0.25 ACRES OF LAND, MORE OR
LESS, LOCATED AT 110 CUTTER MILL                          CV 05-1634 (DRH) (AKT)
ROAD, GREAT NECK, NEW YORK,


                              Defendants.
--------------------------------------------------------X

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

## I.      PRELIMINARY STATEMENT

On March 30, 2005, the United States of America ("the Government") originally

commenced this action against the Estate of Lillian Wiesner (the "Estate"), John P. Maffei

("Maffei"), and 0.25 Acres of Land, More or Less, Located at 110 Cutter Mill Road, Great Neck,

New York (the "Property") (collectively, "Defendants"), to recover for the alleged release of

hazardous substances at the Property.  *See generally* Complaint ("Compl.") [DE 1].  At that time,

the New York State Liquidation Bureau ("NYLB") retained London Fischer LLP ("London

Fischer") to defend John Maffei pursuant to an insurance policy issued by The Home Insurance

Company.  *See* Affidavit of Michael J. Carro in Support of Motion to Withdraw as Counsel

("Carro Aff.") [DE 70-1], ¶ 3.  On June 22, 2016, the Government notified the Court that it had

reason to believe that the Estate and Mr. Maffei have violated the Consent Judgment.  *See*

*generally* Government's Request for a Pre-Motion Conference (the "Request") [DE 63].  The

Government further stated that it intends to file a motion to enforce the Consent Judgment and

therefore was requesting a pre-motion conference for that purpose.  *Id.*

On September 1, 2016, London Fischer filed a Motion to Withdraw as Counsel for John Maffei. *See* DE 70. Judge Hurley referred the motion to this Court for a Report and Recommendation as to whether the motion should be granted and London Fischer should be relieved. For the reasons which follow, the Court respectfully recommends to Judge Hurley that London Fischer's motion seeking to withdraw as counsel for John Maffei be GRANTED.

## II.    BACKGROUND

### A.    Relevant Facts and Procedural History

There is a substantial history involved in this case. Based on the nature of the instant motion, the Court sets forth only those facts necessary for context and which are relevant to the determination of the pending motion. On March 30, 2005, the Government, acting at the request of the Administrator of the United States Environmental Protection Agency, filed a Complaint against the Estate of Lillian Wiesner, John P. Maffei, and 0.25 Acres of Land, More or Less, Located at 110 Cutter Mill Road, Great Neck, New York, pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601-9675 ("CERCLA"). *See generally* Compl. Pursuant to Section 105 of CERCLA, the EPA placed the Property on the National Priorities List in 1999. Compl., ¶ 21.

According to the Complaint, Lillian Wiesner was the record owner of the 0.25 acre area at issue here. Compl., ¶ 6. Lillian Wiesner died in March 2001 and the Property subsequently passed to her Estate. *Id.*, ¶¶ 7-8. Situated on the Property is a two-story building that has housed dry-cleaning facilities for many years. *Id.*,   ¶ 19. An entity named Executeam Corp. ("Executeam") executed two master leases, covering both sections of the property, for a 51-year period beginning in 1967. *Id.*, ¶¶ 23, 24. John Maffei was the president and sole shareholder of Executeam. *Id.*, ¶ 28. In May 1968, Executeam subleased the Property to Stanton Cleaners, Inc.

*Id.*, ¶ 29. The Complaint asserts that Executeam later assigned the sublease to John Maffei in 1983 and thereafter assigned the master leases to John Maffei in 1987. *Id.*, ¶¶ 32-33.

The New York State Department of Environmental Conservation ("NYSDEC") initiated a Remedial Investigation of the site in April 1997. *Id.*, ¶ 35. A year later, the EPA received a request from NYSDEC to conduct an emergency response action to address soils contaminated with tetrachloroethylene (perchloroethylene) ("PCE") at the site. *Id.*, ¶ 36. The EPA determined that the dry-cleaning business was causing the release of these hazardous substances. *Id.*, at ¶¶ 36-39. The Government asserted that as of the date of the Complaint, the EPA had incurred at least $7.5 million in performing response actions at the Property and was continuing to incur additional response costs. *Id.*, at ¶ 47. On February 27, 2003, the EPA filed and perfected a CERCLA lien against the Property, *id.*, at ¶ 53, and, on April 21, 2003, the EPA filed and perfected a CERCLA lien against John Maffei's leasehold interest in the Property. *Id.*, at ¶ 55.

The Home Insurance Company ("the Insurer") insured the Property but was declared insolvent on June 13, 2003.[1] Carro Aff., ¶ 4. As such, the NYLB assumed the role of ancillary receiver of the Insurer. *See* Consent Judgment, annexed as Exhibit ("Ex.") A to the Carro Aff. [DE 70-2], Section I(I). In that capacity, the NYLB retained London Fischer to represent John Maffei in this action pursuant to a policy issued to Maffei by Home Insurance. Carro Aff., ¶ 3.

---

[1] The Consent Judgment entered into by the parties and "So Ordered" by Judge Hurley on September 26, 2012 states in Section I.H. that "[o]n June 13, 2003, The Home Insurance Company, defined below, was declared insolvent in the matter of *The Home Insurance Company, Merrimack County Superior Court, State of New Hampshire*, 03-J-0106 (hereinafter, 'Liquidation Action'). On June 10, 2004, the United States filed a proof of claim in the Liquidation Action with respect to the Site (hereinafter, 'Proof of Claim')." *See* DE 70-2.

After a lengthy series of negotiations, the parties filed a proposed Consent Judgment on August 17, 2012, which Judge Hurley approved on September 26, 2012. *See* Consent Judgment [DE 70-2] at 24. Two paragraphs of the Consent Judgment are of particular note with regard to the instant motion:

> This Court shall retain jurisdiction over this matter for the purpose of interpreting and enforcing the terms of this Consent judgment.
>
> . . .
>
> Upon entry of this Consent Judgment by the Court, this Consent Judgment shall constitute the final judgment between and among the United States and Settling Defendants. The Court enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

Consent Judgment [DE 70-2], ¶¶ 35, 42. The case was closed on the same day.

There was no further activity in this case until June 22, 2016, when the Government filed its Request for a pre-motion conference for purposes of moving to enforce the Consent Judgment. DE 63. In that Request, the Government explained that the Settling Defendants had violated at least three provisions of the Consent Judgment and, as a result, were accruing significant penalties. *Id.* London Fischer filed a response to the Government's Request on July 1, 2016. *See* DE 64. In that letter, London Fischer explained that it forwarded the Government's June 22, 2016 letter to the NYLB, which responded that (1) neither the Insurer nor the NYLB had any obligation to defend and/or indemnify John Maffei in connection with the enforcement proceeding and that (2) London Fischer was consequently no longer authorized to represent John Maffei. *Id.* Having been discharged by the Insurer, London Fischer requested that the Court issue a scheduling order for its anticipated motion to be relieved as counsel. *Id.*

On July 7, 2016, Judge Hurley set a briefing schedule for London Fischer's motion: moving papers were due to be filed by July 22, 2016, opposing papers by August 22, 2016, and

4

reply papers, if any, by September 2, 2016.  *See* July 7, 2016 Electronic Order.  Shortly

thereafter, the Court received a brief letter from John Maffei, dated July 9, 2016, in which he

stated his objection to the withdrawal of London Fischer as counsel.  DE 65.  Mr. Maffei further

asserted that he has not violated the Consent Judgment and the case has not reached a

conclusion.  *Id*.  He requests that the Court schedule a hearing at which he may "clarify [his]

position."  *Id*.  The Court received a second letter from John Maffei, this one dated August 6,

2016.  DE 68.  Equally as brief as the first, the letter simply contains a request that the Court

deny London Fischer's motion to withdraw if one had been filed.  *Id*.

On September 1, 2016, London Fischer filed its Motion to Withdraw as Attorney, John

Maffei's Opposition to the motion, the Government's Opposition to the motion, and London

Fischer's Reply.  *See* DE 70-73.  Judge Hurley subsequently referred the motion to this Court for

a Report and Recommendation as to whether the motion should be granted.  *See* September 2,

2016 Electronic Order.

### B.    London Fischer's Motion

In support of its Motion to Withdraw as Counsel, London Fischer filed an Affidavit

completed by Michael J. Carro, a member of the firm.  *See generally* Carro Aff.  Three exhibits

are attached to the Carro Affidavit, namely:  (A) the Consent Judgment, Ex. A [DE 70-2], (B) the

Government's June 22, 2016 Request, Ex. B [DE 70-3], and (C) a coverage opinion letter issued

by NYLB's coverage counsel on June 27, 2016, Ex. C [DE 70-4].  As a preliminary matter, the

Court notes that London Fischer has not filed a separate Memorandum of Law in accordance

with Local Civil Rule 7.1.  The decision whether to proceed notwithstanding this deficiency falls

within the discretion of the Court.  In the interest of judicial economy, the Court is accepting

London Fischer's filings as they stand -- since there is some discussion of the applicable law set forth in the Affidavit -- and will proceed to the merits of the motion.

London Fischer argues that "in deciding motions to withdraw as counsel under Local Rule 1.4, Courts have held that 'when counsel has been discharged—and agreed to the termination—the order to withdraw should issue except under the most compelling circumstances.'" Carro Aff., ¶ 9 (citing *Casper v. Lew Lieberbaum Co*., 1999 WL 335334, at *4 (S.D.N.Y.)). In this regard, Attorney Carro argues that the underlying case for which London Fischer was retained was resolved when Judge Hurley "so ordered" the parties' proposed Consent Judgment back in September 2012. *Id*. According to London Fischer, the firm had no communication with any of the parties until May 2016, when the Government informed the firm that it believed John Maffei was in default on multiple terms of the Consent Judgment. *Id*. The Insurer subsequently notified London Fischer that it was disclaiming coverage for any allegations arising from John Maffei's alleged violation of the Consent Judgment and that London Fischer was no longer authorized to represent John Maffei. *Id*. London Fischer maintains that John Maffei's "insurers" were the only sources of funding for legal fees and "[i]t is well established that 'non-payment of fees is a valid basis for the Court to grant counsel's motion to withdraw.'" *Id*., ¶ 10 (citing *Team Obsolete Ltd. v. A.H.R.M.A. Ltd*., 464 F. Supp. 2d 164 (E.D.N.Y. 2006)). Moreover, Attorney Carro asserts that the disclaimer creates an "irreconcilable conflict" between the firm and John Maffei, "which itself is a proper basis for withdrawal." *Id*., at ¶ 11 (citing *United States v. Lawrence Aviation Industries*, No. 06-4818, 2011 WL 601415 (E.D.N.Y. Feb. 11, 2011)).

London Fischer further argues that in deciding a motion to withdraw, the Court must also consider the "posture of the case" and "whether 'the prosecution of the suit is likely to be

6

disrupted by the withdrawal of counsel.'" *Id.*, ¶ 12 (quoting *Whiting v. Lacara*, 187 F.3d 317, 320-21 (2d Cir. 1999)).  Attorney Carro states that the action for which London Fischer was retained "was completely resolved almost four years ago" and "[i]t would not be unduly prejudicial for Mr. Maffei to obtain new counsel to defend him in this action."  *Id.*

### C.   Maffei's Opposition

London Fischer filed John Maffei's August 6, 2016 letter referenced above as Maffei's opposition to the motion.  As noted, the letter provides that if London Fischer has filed a motion to withdraw as counsel, then Mr. Maffei requests that the motion be denied.  *See* DE 71.

### D.   The Government's Opposition

The Government argues that "[i]n order to withdraw from representation, an attorney must demonstrate proper cause.  And, 'the decision to grant or deny such a motion ultimately falls within the discretion of the court.'"  United States of America's Memorandum of Law in Opposition to London Fischer's Motion to Withdraw as Counsel ("Govt's Opp'n") [DE 72], at 5 (quoting *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999)).  According to the Government, courts consider "various reasons for withdrawal of counsel, including non-payment of fees, inability to communicate with a client, and, generally, whether the prosecution of the suit is likely to be disrupted by the withdrawal of counsel."  Govt's Opp'n at 6.  Here, the Government asserts, "there is no evidence of non-payment or inability to communicate with Defendant John P. Maffei and the prosecution of the action—and more specifically, the United States' motion to enforce the Consent Judgment—would likely be disrupted by the withdrawal of counsel."  *Id.*

The Government maintains that "the mere 'nonpayment of legal fees, without more, is not usually a sufficient basis to permit an attorney to withdraw from representation.'"  *Id.* (quoting *Stair v. Calhoun*, 722 F. Supp. 2d 258, 264 (E.D.N.Y. 2010)) (internal quotation marks

omitted). In doing so, the Government cites Disciplinary Rule 2-110(c)(1)(f) of the ABA Model Code of Professional Responsibility, which provides that permissive withdrawal is permitted if a client "deliberately disregards an agreement or obligation to the lawyer as to expenses or fees." *Id.* (internal quotation marks omitted). Moreover, the Government contends that according to a New York State Bar Association Committee on Professional Ethics Opinion, a client "deliberately disregards an agreement or obligation to pay legal fees when "the failure is conscious rather than inadvertent, and is not *de minimus* in either amount or duration." *Id.* (citing *Stair*, 722 F. Supp. 2d at 266). Here, the Government advances, "[t]here is no evidence of non-payment of fees on this motion." *Id.*, at 7.

The Government further states that in order for a lack of communication between an attorney and a client to justify a withdrawal of representation, "the attorney must demonstrate a significant effort to contact his [or her] client to justify withdrawing from representation." *Id.* (citing *Shaw v. Creditors Fin. Grp.*, No. 08-CV-0504A(SR), 2010 WL 1292771, at *1 (W.D.N.Y. Mar. 3, 2010)), *report and recommendation adopted*, No. 08-CV-504A, 2010 WL 1292315 (W.D.N.Y. Mar. 29, 2010). Concluding that "[t]here is no evidence of a failure to communicate with Mr. Maffei on this motion," the Government argues that the prosecution of this suit will likely be disrupted by the withdrawal of London Fischer since London Fischer was the firm that negotiated the terms of the Consent Judgment on behalf of John Maffei. *Id.*, at 7-8.

The Government acknowledges language in the Consent Judgment that the NYLB "is not obligated to defend or indemnify" John Maffei in any action arising from the enforcement of the Consent Judgment. *Id.* at 9. However, the Government emphasizes, this provision addresses the NYLB's obligations to John Maffei, not London Fischer's obligations to John Maffei as his attorney. *Id.*

8

Ultimately, the Government contends that the Court has jurisdiction to enforce the Consent Judgment and urges that the Government "should be allowed to expeditiously enforce the Consent Judgment to ensure the retroactive and future payment of property taxes to ultimately effectuate the sale of the property that is required by the Consent Judgment." *Id*. at 10-11.  In the alternative, the Government posits that should London Fischer be permitted to withdraw as counsel, and if John Maffei decides to retain new counsel, then Mr. Maffei's time to do so be limited to allow for an expedited briefing schedule on the Government's Motion to Enforce the Consent Judgment.  *Id*. at 11.

### C.    London Fischer's Reply

According to London Fischer, the Insurer's instructions that the firm is "no longer authorized to represent Mr. Maffei constitutes a 'discharge' that our office has agreed to and which on its own is sufficient grounds for withdrawal."  Reply Affidavit and Memorandum of Law of Michael J. Carro in Support of Motion to Withdraw as Counsel ("Carro Reply Aff.") [DE 73], ¶ 4 (citing *United States v. All Right, Title and Interest in the Real Property and Appurtenances Thereto Known as 35-37 East Broadway, New York, New York 10002*, No. 12 Civ. 4034, 2013 WL 4006073, at *8 (S.D.N.Y. 2013) (where no other party demonstrated any prejudice by the landlord's desire to stop litigating on its own behalf and counsel had been instructed to stop working on this case, the court concluded these were satisfactory reasons to grant withdrawal of counsel motion, despite the landlord's pending bankruptcy filing); *Casper v. Lew Lieberbaum & Co*., No. 97 CIV. 3016, 1999 WL 335334, at *4 (S.D.N.Y. 1999) ("because Movants were discharged by plaintiffs, they were required to withdraw as counsel)).  London Fischer further argues that "by attempting to resurrect this long-concluded matter, the [Government] has effectively commenced an entirely new action; one that sounds in contract

9

law, with the Consent Judgment as the contract at issue."  Carro Reply Aff., ¶ 6 (*citing*

*Kozlowski v. Coughlin*, 871 F.2d 241, 245 (2d Cir. 1989)).  According to Attorney Carro, the

Consent Judgment itself provides that "any future attempts by the United States to enforce the

Consent Judgment necessitat[es] a new action."  *Id.* (citing Carro Aff., Ex.  "A" at ¶ 12 ("If the

United States brings an action to enforce this Consent Judgment…"), ¶ 23 ("Settling Defendants

also shall, with respect to any suit or claim brought against it for matters related to this Consent

Judgment. . ."), ¶ 24 ("In any subsequent administrative or judicial proceeding initiated by the

United States for injunctive relief, recovery of response costs, or other relief relating to the Site

. . .")).  In further support of its proposition, London Fischer relies on Fed. R. Civ. P. 60(c)(1),

"which states that a motion seeking relief from a Judgment must be made no more than a year

after the Judgment is entered."  Carro Reply Aff., ¶ 6.

Further, London Fischer argues that the Consent Judgment which the Government now

seeks to enforce is the very source of the Insurer's right to disclaim coverage and a defense, and

of London Fischer's right to cease representation.  *Id.*, ¶ 10.  In addition, the Government's

attempts to argue that the potential disruption to the case warrants denial are without merit

because "it is any potential prejudice to [the firm's] former <u>client</u> which must be considered, and

not to our former adversary."  *Id.*, ¶ 13 (citing *Shaw v. Creditors Fin. Grp.*, 2010 WL 1292771

(W.D.N.Y. 2010) (emphasis in original)).  Likewise, any delay affecting the Government's

ability to enforce the Consent Judgment, according to London Fischer, "is of its own making."

*Id.*, ¶ 14.

## III.  STANDARD OF REVIEW

Local Civil Rule 1.4 provides the following:

> An attorney who has appeared as attorney of record for a party
> may be relieved or displaced only by order of the court and may

> not withdraw from a case without leave of court granted by order.
> Such an order may be granted only upon a showing by affidavit or
> otherwise of satisfactory reasons for withdrawal or displacement
> and the posture of the case, including its position, if any, on the
> calendar.

In deciding a motion to withdraw as counsel, courts must consider (1) the reasons for the

withdrawal, and (2) the impact withdrawal will have on the timing of the proceeding. *Karimian*

*v. Time Equities, Inc*., No. 10 Civ. 3773, 2011 WL 1900092, at *2 (S.D.N.Y. May 11, 2011);

*Blue Angel Films, Ltd. v. First Look Studios, Inc*., No. 08 Civ. 6469, 2011 WL 672245, at *1

(S.D.N.Y. Feb. 17, 2011).  The ultimate decision of whether to grant or deny a motion to

withdraw as counsel "falls to the sound discretion of the trial court." *Stair v. Calhoun*, 722 F.

Supp. 2d 258, 264 (E.D.N.Y.) (quoting *In re Albert*, 277 B.R. 38, 47 (Bankr. S.D.N.Y. 2002)).

The "reasons for withdrawal" have been deemed to include "a client's continued refusal

to pay legal fees." *Team Obsolete Ltd. v. A.H.R.M.A.*, 464 F. Supp. 2d 164, 166 (E.D.N.Y. 2006)

(collecting cases).  In this regard, "the New York Code of Professional Responsibility permits an

attorney to withdraw from representation in situations where, inter alia, the client '[d]eliberately

disregards an agreement or obligation to the lawyer as to expenses or fees,' or where '[t]he

lawyer's client knowingly and freely assents to termination of the employment.'" *Team Obsolete*

*Ltd*., 464 F. Supp. at 166 (citing Disciplinary Rule 2–110, 22 N.Y.C.R.R. § 1200.15(C)(1)(f),

(5)).  Generally, however, "non-payment of counsel fees alone will not entitle an attorney to

withdraw." *U.S. v. Lawrence Aviation Indus.*, No. 06-4818, 2011 WL 601415, at *1 (E.D.N.Y.

Feb. 11, 2011) (collecting cases).

Courts have also held that withdrawal is warranted when a "client renders it unreasonably

difficult for the lawyer to carry out such employment effectively." *Farmer v. Hyde Your Eyes*

*Optical, Inc*., 60 F. Supp. 3d 441, 445 (S.D.N.Y. 2014) (quoting *Lawrence Aviation Indus*., 2011

WL 601415, at *1 (internal quotation marks and alterations omitted)).  This difficulty might arise

from the client's lack of cooperation or failure to communicate, or by "the existence of an

irreconcilable conflict between attorney and client."  *Naguib v. Pub. Health Sols.*, No. 12-2561,

2014 WL 2002824, at *1 (E.D.N.Y. May 15, 2014) (quoting *Diarama Trading Co. v. J. Walter*

*Thompson U.S.A.*, 01 Civ. 2950, 2005 WL 1963945, at *2 (S.D.N.Y. Aug. 12, 2005) (internal

quotation marks omitted)) (citing *Ashmore v. Cgi Group, Inc*., 11 Civ. 8611, 2014 WL 1414314,

at *1 (S.D.N.Y. Apr. 7, 2014); *Winkfield v. Kirschenbaum & Phillips, P.C*., 12 Civ. 7424, 2013

WL 371673, at *1 (S.D.N.Y. Jan. 29, 2013)).

Courts have held that "when counsel has been discharged—and agreed to the

termination—the order to withdraw should issue except under the most compelling

circumstances."  *Casper v. Lew Lieberbaum & Co*., No. 97-3016, 1999 WL 335334, at *4

(S.D.N.Y. 1999); *United States v. All Right, Title and Interest in Real Property and*

*Appurtenances Thereto Known as 35-37 East Broadway, New York, New York 10002*, No 12-

4034, 2013 WL 4006073, at * 8 (S.D.N.Y. Aug. 6, 2013).

## IV.  DISCUSSION

### A.    Reason For Withdrawal

The Court has found little guidance in either Second Circuit case law or New York case

law on the specific question presented by this motion, but the authority the Court did find favors

attorneys seeking to withdraw.  At the outset, the Court looks to the first prong to be considered

under *Karimian v. Time Equities, Inc*., namely, the reason for the withdrawal.  *Karimian*, 2011

WL 1900092, at *2.  Here, there is no mystery as to why London Fischer seeks to be relieved as

counsel.

Originally, London Fischer was retained by NYLB to represent John Maffei under the terms of a policy which The Home Insurance Company -- subsequently liquidated -- issued to Mr. Maffei.  Notwithstanding the Government's argument to the contrary, Govt's Opp'n at 6, the Court does not see the instant motion as one directed solely to fees.  At the time the underlying action was initially pending, the parties were also engaged in a coverage dispute in the Supreme Court, State of New York, County of Nassau.  *See* Appendix C, annexed to the Proposed Consent Judgment [DE 61-3], Ex. 3.  In that action entitled *Mills v. The Estate of Lillian Wiesner, et al.*, Index No. 6933/06, the Acting Superintendent of Insurance, Howard Mills, was the Ancillary Receiver of Home Insurance Company.  As Receiver, Mills was seeking a declaratory judgment regarding the coverage issue.  That case was finally settled.  In pertinent part, the Stipulation of Settlement provides as follows:

> **NOW THEREFORE**, the action captioned United States of America vs. Estate of Lillian Wiesner, John Maffei and 0.25 Acres of Land, More or Less, Located at 110 Cutter Mill Road, Great Neck, bearing Index Number CV-05 1634 in the United States District Court for the Eastern District of New York (hereinafter "the U.S. action"), is settled on the following terms:
>
> . . .
>
> **IT IS STIPULATED AND AGREED**, that the settlement amount in the U.S. action is the sum of Six Hundred and Six Thousand dollars ($606,000.00) (the "Settlement Amount"), is to be recommended for allowance pursuant to Articles 74 and 76 of the New York Insurance Law, by petition of the Superintendent of Financial Services as Ancillary Receiver in the liquidation of Home Insurance Company and will be paid to United States Environmental Protection Agency in accordance with the Consent Judgment entered therein.
>
> . . .
>
> **IT IS FURTHER STIPULATED AND AGREED**, that The Home is not obligated to defend or indemnify the defendants for any action brought by the United States for the Defendants individual or collective failure to comply with and/or breach of the Consent Judgment in the U.S. action . . .

13

Stipulation of Settlement in the Supreme Court, Nassau County coverage action, annexed as

Appendix C to the proposed Consent Judgment.  DE 61-3.  This Stipulation of Settlement is

dated August 14, 2012 and was executed by counsel for Plaintiff Mills as Ancillary Receiver of

The Home; Defendants' counsel Anderson Kill & Olick, P.C.; the Estate of Lillian Wiesner by

Executor Jason Feinstein, Esq.; John Maffei individually; Executeam Corp. by John Maffei; and

counsel for the New York Liquidation Bureau.  *See id.*  This Settlement Agreement confirms that

at the time, The Home—the entity which retained London Fischer to represent John Maffei—

was in liquidation.

Further, the coverage action is referenced several times in the Consent Judgment.  In the

"Background" section of the Consent Judgment, the Court observes the following language:

> F.      Settling Defendants are defending a declaratory judgment action
> in the Insurance Coverage Action, defined below, brought by the
> Superintendent of Insurance of the State of New York, as Ancillary
> Receiver of The Home Insurance Company, defined below, which
> insured Settling Defendants with respect to the Site.
>
> G.      The parties to the Insurance Coverage Action, defined below, are
> resolving the claims brought in that action pursuant to a separate
> agreement and stipulation attached hereto as Appendix C and the
> resolution of that action provides for payment by the Superintendent to
> EPA of $606,000.00 (hereinafter, "Insurance Proceeds") on behalf of
> Settling Defendants.

Carro Aff., Ex. A (Consent Judgment) at I(F) and (G).  The coverage action itself is defined in

Section IV:

> "Insurance Coverage Action" shall mean the insurance coverage
> declaratory judgment action filed by Howard Mills, Acting
> Superintendent of Insurance of the State of New York as Ancillary
> Receiver of The Home Insurance Company against the Estate of Lillian
> Wiesner ("Wiesner Estate"), John P. Maffei ("John Maffei"), and
> Executeam Corp. in the Supreme Court of the State of New York, Count
> of Nassau, Index No. 06/006933, and arising out of the Plaintiff's claims

against Wiesner Estate, John Maffei and Executeam Corp. regarding the
Site.

*Id.*, Section IV. Definitions.  There is no dispute that John Maffei signed both the Consent

Judgment and the Stipulation of Settlement in the Supreme Court, Nassau County declaratory

judgment action, s*ee* Carro Aff., Ex. A at 28, 29 and Appendix C at 3, which means he was

aware of and consented, reluctantly or otherwise, to the foregoing provisions.

Upon receiving the Government's June 22, 2016 letter asserting that the Settling

Defendants had violated the Consent Judgment and that the Government was seeking to make a

motion to enforce the Consent Judgment, Attorney Carro forwarded the Government's letter to

the New York Liquidation Bureau "for evaluation and direction going forward."  Carro Aff., ¶ 6.

In response, the NYLB informed Carro that neither Home Insurance nor the NYLB had any

obligation to defend and/or indemnify John Maffei concerning the allegations raised by the

Government in its pre-motion conference request letter.  *Id.*  Attorney Carro has presented the

Court with the June 27, 2016 opinion letter issued by NYLB's coverage counsel to support his

motion to withdraw.  Coverage counsel states in the letter that

> [i]n my opinion, unless Home Insurance (or another insurance company
> that is in liquidation) insured the Estate of Weisner and/or Maffei
> **subsequent** to the execution of the Consent Judgment, The Liquidation
> Bureau is not obligated to defend the current allegations.  Moreover,
> even if such an insurance company insured the property/defendants,
> insofar as these appear to be deliberate/intentional acts (e.g., failing to
> pay taxes, failing to provide an appraisal, etc., it is unlikely that there
> would be coverage.  Moreover, as indicated in the Stipulation of
> Settlement (Appendix C of the Consent Judgment), "The Home is not
> obligated to defend or indemnify the defendants for any action brought
> by the United States for Defendants individual or collective failure to
> comply with an/or breach the Consent Judgment in the U.S. action."

Carro Aff., Ex. C (emphasis in original).

Following up on the coverage counsel's opinion letter, NYLB's Senior Claims Examiner sent a joint letter to John Maffei and the Executor of the Estate of Lillian Weisner on August 8, 2016. *See* Carro Reply Aff., Ex. D. NYLB conveyed that it had reviewed all of the facts and circumstances and determined that none of the three policies at issue afforded Maffei or the Estate any coverage "for the allegations raised in the U.S. Department of Justice's June 22, 2016 letter to Hon. Judge Hurley." *Id.* at 1. Citing provisions of both the Consent Judgment and the Stipulation of Settlement in the Supreme Court, Nassau County action, NYLB stated that "we are denying coverage, including defense and/or indemnification, under the three policies listed above in connection with these purported violations of the Consent Judgment." *Id.* at 2.

Given the dearth of cases involving analogous circumstances, the Court looks to an old New York case where counsel sought to withdraw from representation when the insurance company disclaimed coverage. In *Schumm v. Long Island Lighting Company*, 56 Misc. 2d 913, 290 N.Y.S. 2d 423 (Dist. Ct. 1968), counsel for the third-party defendant had been retained by the insurer and was seeking to be relieved when the insurer disclaimed coverage. *Id.*, 290 N.Y.S. 2d at 424. The court there noted that the case presented "a unique situation with regard to the time-honored attorney-client relationship." In granting the motion to withdraw, the court in *Schumm* went on to note the following:

> The question raised here is, Is counsel who is retained by an insurance carrier to represent and defend suits against its insured an attorney for the insured or for the insurer?
>
> By the terms of the liability contract, the insured does not have any control of or any real confidential relationship with his assigned attorney. …
>
> It is clear to this Court that it is beyond all bounds of ethical conduct to require counsel to continue to represent a party to an action when, in all candor, his first loyalty is to his retainor, The insurance company. …

> All of the foregoing point to the unalterable fact that counsel herein serve but one master, the insurance carrier. To require counsel to represent a party in conflict with counsel's primary client (insurance company) is untenable.

*Id; see Alvarado-Vargas v. 6422 Holding Corp.*, 85 A.D. 3d 829, 830, 925 N.Y.S.2d 176 (2d Dep't 2011) (where undisputed that insurer will no longer pay the law firm's legal fees for the insured's defense, the court providently granted the law firm's motion to withdraw); *Marcos v. Guerrier*, No. FSTCV 1260136755, 2013 WL 6989449, at *2 (Conn. Super. Ct. 2013) (finding that it would be inequitable to require the [law firm] to continue to represent the insured, notwithstanding the insured's objection that he did not have sufficient funds to pay substitute counsel, when the firm was retained by the insurer and the insurer had been found to have no duty to defend nor to pay the insured's attorney's fees for defending the action).

The Court was able to find one federal litigation in the Eastern District of Pennsylvania involving circumstances similar to the instant case. *See Zitomer v. Holdsworth*, 200 F. Supp. 490 (E.D. Pa. Dec. 15, 1961). In *Zitomer*, the attorney who had been employed by the insurer to defend a motor vehicle accident case moved to be relieved as counsel. The insurer, which was then insolvent and had been financially unable to carry out its policy obligations, was in receivership based on the decree of a court in Florida. *Id.* The insurer terminated the employment of the attorney who had been retained to represent the individual defendant. *Id.* In granting the motion of defendant's counsel to withdraw, the court in *Zitomer* pointed out that the attorney

> was not employed by the defendant, and the insurance company which selected him has given him notice of the termination of his employment. The practice is now commonplace by which the free choice of a defendant to select counsel to represent him is transferred by contract to the insurance company in aid of its policy obligation to defend and indemnify the insured against

17

> claims. Now that the insurance company is no longer defending the
> claim, the attorney it retained should be superseded by one of the
> insured's own choice.

*Id.*, at 490-91.  The court went on to state that "[a] law firm should not be required to represent

defendants after its employment has been terminated by the insurance company on whose behalf

it entered its appearance.  To do otherwise would fasten a burdensome responsibility upon

counsel. . ."  *Id.* at 491-92.  Although this 1961 decision from the Eastern District of

Pennsylvania is not binding on this Court, the Court nonetheless finds the reasoning here to be

persuasive.   Because the issue here is not solely the non-payment of legal fees, the Court finds

the Government's reliance on *Stair v. Calhoun,* 722 F.Supp. 2d 258, 264 (E.D.N.Y. 2010) to be

misplaced.  This is not a matter of John Maffei not having paid London Fischer for services

rendered because, up to this point, he had no obligation to pay attorneys who are retained by the

insurer.  Likewise, there is no record evidence of any lack of communication between London

Fischer and John Maffei throughout the underlying proceedings to alter the outcome here, and,

thus, the Government's assertion of such grounds to negate withdrawal are unavailing.

John Maffei has requested that this motion be denied, asserting that he has not violated

the Consent Judgment and that this case has not been resolved.  Although he has not stated any

other specific reason, presumably his request is also based on concerns regarding the cost to

retain new counsel.  Although the Court empathizes with Mr. Maffei's situation, he has known

about the circumstances for nearly a year now and he has the right to hire new counsel to defend

him on the Government's anticipated motion to enforce the Consent Judgment.  Moreover, Mr.

Maffei was aware of the terms of the state court Stipulation of Settlement as well as the Consent

Judgment in the event the Government subsequently charged any breach of the Consent

Judgment.   John Maffei's contention that he did not breach the Consent Judgment essentially

has little bearing on the underlying question addressed in this motion.   Given the overall situation, the Court finds that London Fischer's reasons for withdrawal are well-founded and consistent with the limited case law addressing the subject.

### B.    Impact of Withdrawal on Posture of the Case

The Court now turns to the second prong of the test in *Karimian,* namely, the impact withdrawal will have on the timing of the proceeding.  *Karimian,* 2011 WL 1900092, at *2. In assessing judicial economy, courts also look to "the posture of the case," and whether "the prosecution of the suit is [likely to be] disrupted by the withdrawal of counsel."  *Whiting v. Lacara*, 187 F.3d 317, 320 (2d Cir. 1999) (quoting *Brown v. National Survival Games, Inc*., No. 91–CV–221, 1994 WL 660533, at *3 (N.D.N.Y. Nov.18, 1994)) (citing *Malarkey v. Texaco, Inc.*, No. 81-5224, 1989 WL 88709, at *2 (S.D.N.Y. July 31, 1989); *Rophaiel v. Alken Murray Corp.*, No. 94 Civ. 9064, 1996 WL 306457, at *2 (S.D.N.Y. June 7, 1996)).  "When a court denies an attorney leave to withdraw it is usually because the client's rights will be prejudiced by the delay necessitated in obtaining replacement counsel or because the Court's trial calendar will be adversely affected."  *Shaw v. Creditors Financial Group*, No. 08-5040A, 2010 WL 1292771, at *1 (W.D.N.Y. Mar. 3, 2010) (quoting *Welch v. Niagara Falls Gazette*, No. 98–CV–685, 2000 WL 1737947, *3 (W.D.N.Y. Nov. 17, 2000)), *report and recommendation adopted by* 2010 WL 1292315.  Though courts may consider the "protracted history of the litigation," "[w]here discovery has not yet closed and the case is not on the verge of trial readiness, prejudice is unlikely to be found."  *Estate of Larry Shaw and Susan Shaw v. Marcus*, Nos. 14-3849, 14-5653, 2016 WL 4679734, at *2 (S.D.N.Y. 2016) (quoting *Bruce Lee Enterprises, LLC. v. A.V.E.L.A*., No. 10-2333, 2014 WL 1087934, at *2 (S.D.N.Y. 2014);  *Winkfield*, 2013 WL 371673, at *1) (citing *Thekkek v. LaserSculpt, Inc*., No. 11 CIV. 4426, 2012 WL 225924, at *2 (S.D.N.Y. Jan.

23, 2012)) (internal quotation marks omitted); *see Karimian*, 2011 WL 1900092, at *3 (finding that denial of the motion was not warranted when "although substantial discovery has taken place, discovery has not yet closed, and trial is still several months away.").

The record is clear here that the underlying action, commenced in March 2005, was resolved with the entry of a Consent Judgment on September 26, 2012. *See* September 26, 2012 Electronic Order. The case was closed on that same day. It was not until June 22, 2016, some four years later, when the Government filed its letter requesting a pre-motion conference for its anticipated motion to enforce the Consent Judgment that the case was engaged in further activity. All subsequent filings involve the instant motion to withdraw or the Government's intended motion to enforce the Consent Judgment. Obviously, this case is not on the verge of trial — the case was concluded once judgment was entered in 2012. The parties did agree that this Court would retain jurisdiction for purposes of enforcement of the Consent Judgment. *See* Carro Aff., Ex. 2, Section XV.

The Government argues that granting the motion to withdraw will delay the enforcement proceeding and will therefore prejudice the Government. Govt's Opp'n, at 2. This contention lacks persuasiveness because it appears there has been significant delay on the part of the Government in approaching the Court for enforcement purposes. By way of background, the Consent Judgment set up a procedure by which the Estate would sell the Property to Sabet Development Company within 60 days of the agreement's effective date, September 26, 2012. Carro Aff., Ex. 2, Section V.5.a. According to the Government, however, that sale never occurred. The Request Letter, at 2. The Consent Judgment contemplated and permitted the sale of the Property to a purchaser other than Sabet. Consent Judgment, V.6. Under such circumstances, the Estate agreed to carry out an appraisal utilizing an appraiser approved by the

20

Government.  *Id.*, V.6.a.  The Estate was obligated to provide the Government with the name of the appraiser within 30 days of the Government's request for the same, *id.*, and to carry out the appraisal within 90 days.  The Request [DE 62] at 2.  According to the Government, it requested from the Estate the name of an appraiser on December 26, 2012, but the same was not provided until August 5, 2013.  Id. at 2.  Apparently, the Estate never provided an appraisal of the Property.  *Id.*  Moreover, John Maffei and/or the Estate were required to properly maintain the Property, which included the payment of real property taxes.  Carro Aff., Ex. 2, Sections V.4.c., V.5.e., and V.6.b.  According to the Government, property taxes were not paid to Nassau County for the years 2013, 2014, and 2015, which resulted in liens being placed on the Property. The Request [DE 62] at 2.  Based on these representations, it appears that the Government had notice of purported violations of the Consent Judgment well before the filing of its June 22, 2016 letter seeking a pre-motion conference. *Id.*  Permitting withdrawal at this juncture would not undermine the Court's efforts to resolve the Government's anticipated motion to enforce the Consent Judgment.

The procedural posture of this case weighs in favor of granting London Fischer's motion to withdraw.  Likewise, affording John Maffei a reasonable period of time to retain new counsel will not adversely affect the Court's calendar.  It is unclear to the Court whether Mr. Maffei had the opportunity to pursue a formal objection to NYLB's disclaimer of coverage or ever did so, or whether the time to pursue such relief has expired.  In any event, there is nothing preventing him from discussing with London Fischer LLP the prospect of retaining the firm to represent him on the Government's anticipated enforcement motion, although that prospect seems unlikely given the circumstances.  Nonetheless, this Court respectfully recommends to Judge Hurley that Mr. Maffei be given sufficient time to obtain new counsel.

21

This Court also points out that in its motion to withdraw, Attorney Carro mentions that London Fischer is also seeking an award for "outstanding attorney's fees." Carro Aff., ¶ 2. That is the singular mention of attorney's fees in the entirety of the motion papers. Since London Fisher provides no other information, documentation or argument to support a request for attorney's fees, the Court declines to address this issue further.

## V.   CONCLUSION

For the foregoing reasons, this Court respectfully recommends to Judge Hurley that London Fischer's Motion to Withdraw as Counsel be GRANTED. The Court further recommends that the Court stay these proceedings for a reasonable time to allow John Maffei to retain new counsel.

## VI.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. *See also* Fed. R. Civ. P. 6(a), (e). Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF. A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley, and to the Chambers of the undersigned. Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), cert. denied, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**SO ORDERED**.

Dated: Central Islip, New York
       March 15, 2017

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge